```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

JERRY LANDERMAN                              CIVIL ACTION

VERSUS                                       NO: 14-381

TARPON OPERATING AND                         SECTION: R
DEVELOPMENT, L.L.C., ET AL.
```

### ORDER AND REASONS

Plaintiff Jerry Landerman moves the Court to remand this matter to state court.[1] Because the Court has removal jurisdiction over this case under the Outer Continental Shelf Lands Act, the Court DENIES plaintiff's motion, except insofar as it concerns his Jones Act claim. The Court severs that claim from the rest of this lawsuit and remands it to state court, pursuant to 28 U.S.C. § 1441(c).

### I.   BACKGROUND

On January 15, 2014, plaintiff Jerry Landerman filed this lawsuit in Louisiana state court against six defendants: Tarpon Operating and Development, L.L.C.; Shamrock Energy Solutions, L.L.C.; Nabors Offshore Corporation, Rene Offshore, L.L.C.; Pan Ocean Energy Services, L.L.C.; and Hoplite Safety, L.L.C.[2] Plaintiff asserted claims under the Jones Act and the general maritime law based on injuries he sustained while working on an

---

[1]   R. Doc. 12.

[2]   R. Doc. 1-1 at 2-3.

offshore platform. The facts surrounding the incident, as alleged in the complaint, are as follows.

In May 2013, Landerman was working for Pan Ocean as a welder/cutter on the West Cameron 661 "A" Platform, which is in the Gulf of Mexico on the Outer Continental Shelf.[3] Tarpon and Shamrock allegedly owned the platform at issue,[4] and Hoplite served as a safety consultant for operations on the platform.[5] According to Darren Herpin, the Chief Operating Officer of Hoplite, "Platform A in the West Cameron Block 661 is engaged in drilling operations to produce oil and gas."[6]

While performing his work, Landerman had lodging on the vessel M/V RENE, which was allegedly owned and operated by Rene Offshore.[7] A Pan Ocean executive stated, however, that the vast majority of plaintiff's actual work offshore took place on fixed platforms.[8] Plaintiff "did not perform any welding, cutting, or other work on . . . vessels which provided transportation and lodging."[9]

---

[3]   *Id.* at 3; R. Doc. 15-1 at 1.

[4]   R. Doc. 1-1 at 3.

[5]   R. Doc. 15-1 at 1.

[6]   *Id.*

[7]   R. Doc. 1-1 at 3.

[8]   R. Doc. 16-1 at 2 "([B]eginning in July 2011, Landerman began to work sporadically offshore. . . . Pan Ocean Energy's records indicate that the vast majority of Landerman's offshore work was performed as a welder on fixed platforms.").

[9]   *Id.*

On May 20, 2013, Landerman was being transferred from the platform to the M/V RENE by means of a personnel basket that was hanging from a crane on the platform.[10] The crane operator, who was allegedly employed by either Tarpon, Shamrock, or Nabors Offshore, set the personnel basket down on top of equipment on the deck of the M/V RENE.[11] The basket then allegedly tipped over, causing plaintiff to fall to the deck of the vessel and sustain serious injuries.[12]

Landerman alleges that his injuries were a direct result of the unseaworthiness of the M/V RENE and the negligence of all defendants.[13] He seeks damages for lost wages and diminished earning capacity, medical expenses, pain and suffering, disability, "loss of household services," loss of enjoyment of life, and "permanent disfigurement," as well as maintenance and cure.[14] In addition to the Jones Act and the general maritime law, the complaint also invokes as possible theories of recovery the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.*; the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.*; and the general negligence laws of Louisiana.[15]

---

[10]   R. Doc. 1-1 at 3.

[11]   *Id.*

[12]   *Id.* at 3, 5-6.

[13]   *Id.* at 4-5.

[14]   *Id.* at 5-6.

[15]   *Id.* at 6.

On February 19, 2014, Hoplite timely removed the lawsuit to this Court "pursuant to 28 U.S.C. §§ 1331, 1441, and 1446"[16] with the consent of all defendants.[17] In its Notice of Removal, Hoplite alleges that "[t]his action is removable pursuant to 28 U.S.C. § 1441(a) because it is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1333."[18] Plaintiff now moves to remand the case to state court, arguing that cases brought in state court under the general maritime law are not removable.[19] Hoplite, Pan Ocean, Rene Offshore, Nabors Offshore, and Tarpon have filed memoranda in opposition to plaintiff's motion.[20]

## II.   LEGAL STANDARD

Unless a federal statute expressly provides otherwise, a defendant may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction over the case. 28 U.S.C. § 1441(a). The removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276

---

[16]   R. Doc. 1 at 1.

[17]   *See id.* at 5-9.

[18]   *Id.* at 2.

[19]   R. Doc. 12.

[20]   R. Doc. 15 (Hoplite); R. Doc. 16 (Pan Ocean); R. Doc. 17 (Rene Offshore); R. Doc. 19 (Nabors Offshore and Tarpon).

F.3d 720, 723 (5th Cir. 2002)). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

**III. DISCUSSION**

Plaintiff argues that the Court does not have removal jurisdiction over this case because cases brought in state court under the general maritime law are unremovable. Hoplite responds that the Court would have original jurisdiction of this case on two independent bases, and hence that removal of the action was proper under § 1441. First, Hoplite argues, the Court would have federal question jurisdiction over the case under the Outer Continental Shelf Lands Act. *See* 43 U.S.C. § 1349(b)(1) (providing for jurisdiction "of cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals[] of the subsoil and seabed of the outer Continental Shelf"); *see also* 28 U.S.C. § 1331 (providing for jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"). Second, Hoplite contends that the Court would have original jurisdiction under 28 U.S.C.

§ 1333, which grants the district courts original jurisdiction over admiralty and maritime cases.[21] Hoplite concedes that plaintiff's claim under the Jones Act is not removable, see 46 U.S.C. § 30104; 28 U.S.C. § 1445(a), but it contends that this claim should be severed and remanded to state court pursuant to § 1441(c). Pan Ocean, Rene Offshore, Nabors Offshore, and Tarpon make substantially the same arguments as Hoplite in opposing plaintiff's motion to remand.

Pan Ocean also argues that plaintiff fraudulently pleaded his Jones Act claim and accordingly requests that this claim be dismissed. Pan Ocean contends that, because plaintiff worked as a welder on an offshore platform rather than as a crewmember on a vessel or identifiable group of vessels, he lacks seaman status and cannot maintain a Jones Act claim.

For the reasons that follow, the Court holds that it has removal jurisdiction over this case under OCSLA, but that plaintiff's Jones Act claim should be severed and remanded to state court pursuant to § 1441(c).[22]

---

[21] As noted above, Hoplite identified § 1331 and § 1333 as possible bases of removal jurisdiction in its Notice of Removal. See R. Doc. 1 at 1-2.

[22] In light of this disposition, the Court need not decide whether general maritime law claims are removable under § 1441 absent a separate and independent ground of federal subject matter jurisdiction. Under the former version of § 1441, the answer to that question was unequivocally no. See, e.g., In re Dutile, 935 F.2d 61, 62-63 (5th Cir. 1991) ("[A]dmiralty and maritime claims may be removed to federal court only by non-forum defendants and only where there is complete diversity of citizenship."). But the

A.   **The Court Has Removal Jurisdiction Under OCSLA.**

Removal of civil actions to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part:

> **(a) Generally.** -- Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

District courts have original federal question jurisdiction of cases brought under OCSLA, and hence such cases can be removed to federal court under § 1441. *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220-21 (5th Cir. 2013). This is true regardless of whether federal, state, or maritime law provides the substantive rule of decision in the case, and regardless of the citizenship of the parties. *Id.* at 220-22. Thus, if the Court has jurisdiction over this case under OCSLA, removal was unquestionably proper.

---

removal statute was amended in 2011, and district courts across the country have sharply divided on whether the amendments to § 1441 rendered general maritime law claims removable to federal court. *Compare Coronel v. AK Victory*, No. C13-2304, 2014 WL 820270, at *2-11 (W.D. Wash. Feb. 28, 2014), *and Barry v. Shell Oil Co.*, Civil Action No. 13-6133, 2014 WL 775662, at *1-3 (E.D. La. Feb. 25, 2014) (cases brought under the general maritime law are not removable), *with Garza v. Phillips 66 Co.*, Civil Action No. 13-742, 2014 WL 1330547, at *4-5 (M.D. La. Apr. 1, 2014), *and Harrold v. Liberty Ins. Underwriters, Inc.*, Civil Action No. 13-762, 2014 WL 688984, at *3-4 (M.D. La. Feb. 20, 2014), *and Carrigan v. M/V AMC AMBASSADOR*, Civil Action No. H-13-03208, 2014 WL 358353, at *2 (S.D. Tex. Jan. 31, 2014), *and Bridges v. Phillips 66 Co.*, Civil Action No. 13-477, 2013 WL 6092803, at *4-5 (M.D. La. Nov. 19, 2013), *and Wells v. Abe's Boat Rentals Inc.*, Civil Action No. H-13-1112, 2013 WL 3110322, at *1-4 (S.D. Tex. June 18, 2013), *and Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772, 774-78 (2013) (cases brought under the general maritime law are removable).

To determine whether a plaintiff's claim arises under OCSLA, "the Fifth Circuit applies a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Id.* at 213 (citing *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 496 (5th Cir. 2002); *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988)); *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999). The Court finds that all three elements of the test are satisfied in this case.

It is clear from the face of plaintiff's petition that his alleged injuries occurred on a OCSLA situs. OCSLA covers, *inter alia*, "all artificial islands . . . permanently or temporarily attached to the seabed [of the OCS], which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1). When plaintiff was injured, he was in a basket hanging from a crane that was located on a platform on the OCS.[23] "It is well established that a platform is an 'artificial island' within the meaning of OCSLA." *Hollier v. Union Tex. Petroleum Corp.*, 972 F.2d 662, 664 (5th Cir. 1992) (citing *Rodrigue v. Aetna Ca. & Sur. Co.*, 395 U.S. 352, 361-66 (1969)), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Mar., LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc). Courts

---

[23] *See* R. Doc. 1-1 at 3; R. Doc. 15-1 at 1.

have held that when, as here, an individual is "physically connected" to an offshore platform at the time of the accident giving rise to the suit, the OCSLA situs requirement is satisfied. *See Wells v. Abe's Boat Rentals Inc.*, Civil Action No. H-13-1112, 2013 WL 3110322, at *4 (S.D. Tex. June 18, 2013) (plaintiff's claim arose under OCSLA because his state court petition alleged that he was injured when a crane fixed to a platform "lifted [him] off [a] vessel deck by his arm, resulting in spinal and other injuries"); *Dennis v. Bud's Boat Rental, Inc.*, 987 F. Supp. 948, 950 (E.D. La. 1997) (when plaintiff's injury occurred while he was in a personnel basket attached to a crane on a platform, OCSLA situs was "present because of the plaintiff's physical connection to the platform via the personnel basket attached to the crane"); *cf. Hollier*, 972 F.2d at 665-65 (OCSLA situs requirement satisfied because the plaintiff "was in physical contact with the platform at the time of his injury").

It is likewise clear that plaintiff's employment furthered mineral development on the Outer Continental Shelf. According to Herpin's uncontroverted affidavit, the platform upon which plaintiff was working when he was injured "is engaged in drilling operations to produce oil and gas."[24] *Cf. Hufnagel*, 182 F.3d at 350 (finding that plaintiff's "employment furthered mineral production

---

[24] R. Doc. 15-1 at 1.

on the shelf" because his "injuries occurred on a stationary [oil] drilling platform" located on the shelf).

Finally, plaintiff's injury would not have occurred but for his employment. Plaintiff alleges that, at the time of his injury, he was being transferred from the platform, where he was working, to the M/V RENE, where his living quarters were.[25] Had plaintiff not been employed to perform welding work on the platform, he would not have been in the personnel basket and thus would not have been injured. *Cf. Hufnagel*, 182 F.3d at 350 (plaintiff's claim that he was struck by a chain while working on a fixed platform arose under OCSLA because the injury would not have occurred but for his work on the platform).

Accordingly, the Court finds that this lawsuit arises under OCSLA and hence was properly removed pursuant to 28 U.S.C. §§ 1331 and 1441(a).

**B.   Plaintiff's Jones Act Claim Should Be Severed and Remanded.**

Jones Act claims filed in state court are not removable to federal court. *Hufnagel*, 182 F.3d at 345; *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (noting that the Jones Act "incorporates the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal"). But, under the federal removal statute, a civil action that includes a claim arising under federal law and "a claim that

---

[25]   R. Doc. 1-1 at 3.

10

has been made nonremovable by statute" may be removed to federal court if the action would have been removable absent the latter claim. 28 U.S.C. § 1441(c)(1). The statute directs that, after removal of such an action, "the district court shall sever from the action all claims [made nonremovable by statute] and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(2).

Pan Ocean contends that remand of plaintiff's Jones Act claim is not required here because the claim was fraudulently pleaded. It is generally true that, if a defendant argues that the plaintiff "fraudulently pleaded [a Jones Act claim] to prevent removal," the court may pierce the pleadings to determine whether there is any possibility that the plaintiff would be able to succeed on the merits of that claim. *Lackey*, 990 F.2d at 207. If not, the case is removable notwithstanding the presence of the nonremovable Jones Act claim, and the court may dismiss the latter cause of action.

The Court finds, however, that in this case it is unnecessary to inquire into the merits of plaintiff's Jones Act claim. Instead, that claim should simply be remanded to state court.

The rationale behind the rule articulated in *Lackey* is that plaintiffs should not be able to include in their complaint "parties -- or claims -- [that] are baseless in law and fact and 'serve[] only to frustrate federal jurisdiction.'" *Lackey*, 990 F.2d at 207 (second alteration in original) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)). In order to

prevent this from occurring, federal courts may conduct a limited inquiry into the validity of those claims and dismiss them if they have no merit. *See id.* But here, that plaintiff's complaint includes a Jones Act claim does not affect the Court's jurisdiction of this case. Under § 1441(c), this suit is removable notwithstanding the presence of the Jones Act claim. Thus, regardless of whether plaintiff's Jones Act claim is valid or defective, it cannot "frustrate federal jurisdiction." The *Lackey* rationale is inapplicable to such a situation.

Put slightly differently, the Court has jurisdiction over this case, period. The validity *vel non* of plaintiff's Jones Act claim is irrelevant. Therefore, it would serve no purpose for the Court to reach Pan Ocean's argument that plaintiff's Jones Act claim is meritless. Instead, in accordance with the mandatory language of § 1441(c), the Court simply severs that claim and remands it to state court. *See* 28 U.S.C. § 1441(c) ("[T]he district court *shall* sever from the action [the claims made nonremovable by statute] and *shall* remand the severed claims to the State court from which the action was removed." (emphasis added)). If Pan Ocean believes that plaintiff's Jones Act claim should be dismissed, it may address that argument to the state trial court.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion to remand, except insofar as it concerns his Jones Act claim. That claim must be severed from this case and remanded to state court.

New Orleans, Louisiana, this 1st day of May, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE