UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JERRY LANDERMAN                                    CIVIL ACTION

VERSUS                                             NO: 14-381

TARPON OPERATING AND                               SECTION: R
DEVELOPMENT, L.L.C., ET AL.

**ORDER AND REASONS**

Defendants Tarpon Operating and Development, L.L.C.[1] and Nabors Offshore Corporation[2] move for summary judgment. For the following reasons, the Court grants the motions.

I.   BACKGROUND

On May 20, 2013, Jerry Landerman, a welder on an off-shore platform in the Gulf of Mexico, was injured while being transferred from the platform, where he worked, to the support vessel that provided his transportation and lodging. On January 15, 2014, in Louisiana state court, Landerman sued six defendants for their alleged involvement in the transfer accident: (1) Tarpon Operating and Development, LLC; (2) Shamrock Energy Solutions, LLC; (3) Nabors Offshore Corporation; (4) Rene Offshore, LLC; (5) Pan Ocean Energy Services, LLC; and (6) Hoplite Safety, LLC.[3] Shortly thereafter, defendants removed

---

[1]   R. Doc. 66.

[2]   R. Doc. 65.

[3]   R. Doc. 1-1 at 2-3.

the suit to this Court.[4]  Landerman moved to remand.  The Court denied the motion to remand except as to Landerman's Jones Act claim, which the Court severed and remanded.[5]

The facts surrounding the accident, as alleged in Landerman's complaint, are as follows.  In May 2013, Landerman worked for Pan Ocean as a welder/cutter on the West Cameron 661 "A" Platform, an offshore platform in the Gulf of Mexico on the Outer Continental Shelf.[6]  Although Landerman worked on the platform, he lived on an offshore supply vessel, the M/V RENE.[7]  On May 20, 2013, a crane operator on the platform tried to transfer Landerman from the platform to the RENE.[8]  For the transfer, Landerman entered a personnel basket suspended from the crane.  When the operator tried to transfer the basket to the vessel, instead of landing it cleanly on the bare deck, he landed it on a pile of equipment on the deck, causing the basket to tip over and Landerman to fall out.[9]  The fall seriously injured Landerman.  He blames the accident on the unseaworthiness of the RENE and the negligence of all defendants.[10]  He seeks damages

---

[4]   See id. at 5-9.

[5]   R. Doc. 20.

[6]   R. Doc. 1-1 at 3.

[7]   Id.

[8]   Id.

[9]   Id. at 3, 5-6.

[10]  Id. at 4-5.

for lost wages and diminished earning capacity, medical expenses, pain and suffering, disability, "loss of household services," loss of enjoyment of life, and "permanent disfigurement," as well as maintenance and cure.[11]

The following summarizes the relationships between the parties. At the time of Landerman's accident, Hoplite provided Tarpon with "safety services to assist in the efforts to explore, develop and produce minerals in the Gulf of Mexico," including safety consultation services on the West Cameron 661 "A" platform.[12] The platform belonged to Tarpon.[13] Tarpon hired Shamrock, an independent subcontractor, to run all of the operations on the platform.[14] Much of the activity on the platform centered on the construction of a rig, which was owned by Nabors.[15] Landerman worked as a fitter and welder for Pan Ocean,[16] a subcontractor of Nabors. Rene Offshore owned the RENE.

---

[11]   *Id.* at 5-6.

[12]   R. Doc. 89-1.

[13]   R. Doc. 65-5 at 74 (Landerman Deposition at 74).

[14]   R. Doc. 65-9 at 125 (Campbell Deposition at 125).

[15]   R. Doc. 65-5 at 69 (Landerman Deposition at 69).

[16]   R. Doc. 65-5 at 74 (Landerman Deposition at 74).

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that

the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**III. DISCUSSION**

    **A.   Tarpon's Motion for Summary Judgment**

In deciding Landerman's earlier motion to remand, the Court held that it has jurisdiction over this case under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq*. The Act

5

establishes a body of law that applies to various activities occurring beyond the territorial waters of the states on the seabed, subsoil, and fixed structures on the outer Continental Shelf.  43 U.S.C. § 1333(a)(1); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  It directs the Court to apply the law of the state adjacent to the controversy to the extent not inconsistent with other federal laws and regulations.  See 43 U.S.C. § 1333(a)(2)(A); *Rodrigue*, 395 U.S. at 355.  No party has cited, nor has the Court found, any conflict between federal law and the applicable Louisiana law, so the Court applies Louisiana law to Landerman's claims against Tarpon.  The two relevant provisions of Louisiana law are: (1) the general negligence provision, Civil Code Article 2315, and (2) the custodial liability provisions, Civil Code Articles 2317 and 2317.1.

    *1.    General Liability Under Article 2315*

Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.  A principal cannot be liable for injuries resulting from the negligent acts of an independent contractor "unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."  *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th

6

Cir. 1994). But a principal remains liable for its own acts of negligence. *Graham*, 21 F.3d at 645.

Louisiana courts conduct a duty-risk analysis to determine whether to impose tort liability under Article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-633 (La. 2006). Under the duty-risk analysis, a plaintiff must prove each of five elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard of care (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope-of-duty element); and (5) actual damages (the damages element). *S.J. v. Lafayette Parish Sch. Bd.*, 41 So. 3d 1119, 1125 (La. 2010); *see also Knight v. Kellogg Brown & Root Inc.*, 333 F. App'x 1, 6 (5th Cir. 2009) (applying Louisiana law).

Thus for Landerman to prevail on his negligence claim against Tarpon, he must be able to prove, among other things, causation. The only causation argument Landerman makes in his opposition to Tarpon's motion is that the "crane and/or condition of the platform contribute[d] to causing the accident."[17] But the evidence put forward by Landerman does not support the

---

[17]   R. Doc. 87-1.

inference that anything about the crane caused the accident, and Landerman puts forward no evidence about the platform. Landerman's best--indeed, his only--causation argument about the crane is that the grating area around the base of the crane was wider than would be ideal, and that this design sometimes created a visual obstruction for the crane operator, who had to look through the grating to see what he was doing.  Landerman submits the deposition testimony of Mike Richards, a crane operator for Nabors, who testified that the "walk-around was built too wide" and that "it was something of an obstacle" for the operator "[l]ooking through the grating."[18]  Landerman also submits deposition testimony by Cles Courvell, the Hoplite Safety Representative.  Courvell testified that when looking through the grating, "[t]he boat was visible, it's just the vision was distorted" and agreed that "the primary obstruction was the grating itself."[19]  Finally, Landerman submits deposition testimony from Stephen Campbell, the Shamrock crane operator who operated the crane the night of the accident.  Campbell testified that after Landerman's accident, the platform stopped doing transfers at night, because there was "more chance of more

---

[18]    R. Doc. 87-2 at 3 (Richards Deposition at 50).

[19]    R. Doc. 87-3 at 2 (Courvell Deposition at 81).

incidents," which he agreed was in part because "you couldn't see as well."[20]

Even if the Court credits this testimony as true and assumes that there was some "distortion" or "obstruction" created by the grating, Landerman has submitted no evidence to support the conclusion that this distortion or obstruction contributed to his accident.  Indeed, Richards, who testified that the grating was "built too wide," went on to testify that "[w]e talked about it a little bit here and there, you know, but there was no big issues on it."[21]  Likewise, Campbell, who testified that "you couldn't see as well" during night transfers also testified that "with the boat lights," seeing through the grating "didn't seem that hard."[22]  Thus, Landerman has not demonstrated that an issue of material fact exists as to causation.  His negligence claim against Tarpon must be dismissed.

   *2.   Custodial Liability Under Articles 2317 and 2317.1*

Next, Tarpon argues that no genuine issue of material fact exists as to its custodial liability under Louisiana Civil Code Article 2317 and 2317.1, because it was not in custody of the platform or crane when the injury occurred, and because there is no evidence that any defect in the crane caused the accident.

---

[20]   R. Doc. 65-9 at 144 (Campbell Deposition at 144).

[21]   R. Doc. 66-9 at 51 (Richards Deposition at 51).

[22]   R. Doc. 65-9 at 145 (Campbell Deposition at 145).

Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Before 1996, custodians were strictly liable under Louisiana law for injuries caused by things in their custody. Accordingly, to recover under article 2317, a plaintiff had to establish only three elements: "(1) the thing causing his damage was in the custody of the defendant; (2) the thing had a 'defect' or a condition creating an unreasonable risk of harm; and (3) the defective condition caused plaintiff's injuries." *Hebert v. Sw. La. Elec. Membership Corp.*, 667 So. 2d 1148, 1157 (La. Ct. App. 1995) (citing *Oster v. Dep't of Transp. & Dev.*, 582 So. 2d 1285 (La. 1991)). In 1996, the Louisiana legislature amended the Civil Code to impose a negligence standard. *Coulter*, 117 F.3d at 913 n.8. Today, in order to prevail on a custodial liability claim under article 2317, a plaintiff must prove a fourth element as well: that "the defendant knew or should have known of the defect" that caused the plaintiff's injuries. *Cormier v. Dolgencorp, Inc.*, 136 F. App'x 627, 627–28 (5th Cir. 2005) (citing La. Civ. Code. arts. 2317, 2317.1).

Thus, for Landerman to prevail on his custodial liability claim, he must be able to prove, among other things, causation. For the reasons that Landerman's negligence claim fails on causation, his custodial liability claim fails on causation as

10

well. Thus, his custodial liability claim against Tarpon must be dismissed.

**B.   Nabors's Motion for Summary Judgment**

The parties do not dispute that Louisiana law, through the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.*, also applies to the dispute between Landerman and Nabors. The two relevant provisions of Louisiana law are: (1) the general negligence provision, Civil Code Article 2315, and (2) the custodial liability provisions, Civil Code Articles 2317 and 2317.1.

*1.   General Liability Under Article 2315*

Nabors asserts that it should receive summary judgment on Landerman's negligence claim because Landerman cannot prove that Nabors owed Landerman a duty of care, or that any action or omission by Nabors caused his injuries. Under a duty-risk analysis, absent a defendant owing a duty to the plaintiff, there can be no actionable negligence and therefore no liability. *Lemann*, 923 So. 2d at 632-633. Whether a defendant owes a duty to another presents a question of law. *Lazard*, 859 So. 2d at 659. The relevant inquiry is "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support his claim." *Audler*, 519 F.3d at 249. (citing *Faucheaux*, 615 So. 2d at 292). "Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. In all cases, duty can be stated generally as the obligation to

conform to the standard of conduct of a reasonable man under like circumstances." *Seals v. Morris*, 410 So. 2d 715, 718 (La. 1981).

Landerman's opposition to Nabors's motion identifies only one alleged duty that Nabors allegedly owed Landerman: the duty "not to allow transfers to occur until the [Nabors rig] equipment was moved" from the deck of the M/V RENE.[23] But Landerman cites no law--and the Court has uncovered none--that indicates that Nabors had a specific duty to direct the placement or storage of its rig equipment in a particular way, or that it owed Landerman a duty to stop the transfer under the facts presented here. Nabors did not employ Landerman; Pan Ocean did. Nabors had no direct authority over Pan Ocean employees, including Landerman.[24] Nabors also had no authority to decide when or how basket transfers would occur.[25] In light of Nabors's lack of control over Landerman and lack of authority regarding basket transfer decisions, the Court concludes that Nabors did not have a duty, under the circumstances, to stop the transfer.

In his opposition, Landerman makes a confusing argument that Nabors may be liable to him in tort on the basis of the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901, *et seq*. The Court need not explore all of the problems with this argument

---

[23] R. Doc. 88.

[24] R. Doc. 65-5 at 82 (Landerman Deposition at 82).

[25] *Id.* at 107 (Landerman Deposition at 107).

because the Court has already severed and remanded Landerman's Jones Act claim to state court. Thus, Landerman's worker compensation claim is not before this Court. Even if the state court decides that Landerman is not a Jones Act seaman and that therefore the Harbor Workers Act applies to his workers compensation claim, that claim will remain before the state court. Because Landerman's workers compensation claim is not before this Court, this argument fails. Nabors is entitled to summary judgment on Landerman's claim under article 2315.

      2. *Custodial Liability Under Articles 2317 and 2317.1*

Next, Nabors argues that no genuine issue of material fact exists as to its custodial liability under Louisiana Civil Code Article 2317 and 2317.1, because there is no evidence that any defect in the crane caused the accident. The Court agrees. Landerman has identified no "defect" in the rig that "creat[ed] an unreasonable risk of harm." *Hebert*, 667 So. 2d at 1157. Thus, Landerman's claim against Nabors under Louisiana custodial liability law fails as a matter of law.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants Tarpon's and Nabors's motions and dismisses Landerman's claims against Tarpon and Nabors.

New Orleans, Louisiana, this 4th day of February, 2015.

    _____*Sarah Vance*_____
          SARAH S. VANCE
    UNITED STATES DISTRICT JUDGE

14